```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  JACKSONVILLE DIVISION
```

CAROLYN MORGAN, AS THE
PERSONAL REPRESENTATIVE OF
DANNY POLSTON,

        Plaintiff,

v.                              Case No. 3:13-cv-81-J-34PDB

KENNETH TUCKER, et al.,

        Defendants.

_____

**ORDER**

**I. Status**

This matter is before the Court on Defendant Corizon, LLC's Motion to Dismiss (Motion; Doc. 113), filed August 13, 2015. Plaintiff filed her response in opposition to the Motion on September 11, 2015. See Plaintiff's Response to Defendant Corizon's Motion to Dismiss (Response; Doc. 122). To the extent that Plaintiff sought leave to amend the complaint as an alternative to a possible dismissal, see Response at 7, the Court denied the request without prejudice to her filing an appropriate motion seeking such relief. See Order (Doc. 124), filed October 7, 2015. Plaintiff has not filed a motion for leave to amend the operative complaint, and the Motion is ripe for review.

**II. Standard of Review**

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534

U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (citation and footnote omitted). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of

facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Fourth Amended Complaint[1]

Plaintiff Carolyn Morgan (Morgan), the mother of Danny Polston (Polston) and personal representative of Polston's estate, sues nine Defendants in the Fourth Amended Complaint (FAC; Doc. 106), filed June 1, 2015: Kenneth S. Tucker, a former Secretary of the Florida Department of Corrections (FDOC); Julie J. Jones (Secretary Jones), Secretary of the FDOC; Brian Riedl, Warden of the Reception

---

[1] In considering the Motion, the Court must accept all factual allegations in the Fourth Amended Complaint (Doc. 106) as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Fourth Amended Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a motion only brought by Corizon, the Court's recitation of the facts will focus on Morgan's allegations as to Corizon, not the other Defendants.

and Medical Center; Steven Wellhausen, Warden of Columbia Correctional Institution (CCI); Don Davis, Warden of CCI; Paul A. Kish, Warden of CCI; Dr. J. Morales, Chief Health Officer at CCI; Dr. D. Gaxiola, Chief Heath Officer at CCI; and Corizon Health, Inc. (Corizon). See FAC at 3-4. Morgan sues Secretary Jones in her official capacity and the remaining individual Defendants in their individual capacities. She asserts that Corizon "contracted with the [FDOC] to provide medical services to inmates and was responsible for oversight, personnel, policies and protocols of medical care while [Polston] was still alive and incarcerated by the [FDOC]." Id. at 4-5, ¶ 14.

According to the FAC, while in FDOC custody, Polston was confined to a wheelchair, was a disabled and qualified individual as defined in the Americans with Disabilities Act and the Rehabilitation Act, and required assistive devices in order to perform daily activities. See id. at 2, ¶ 5; 5, ¶ 17. Morgan asserts that Polston's medical challenges at issue in the instant action began on December 4, 2009, when he fell from his wheelchair and fractured his hip. See id. at 7, ¶ 24. He suffered from various medical conditions and impairments, including: hip replacement, necrosis, and osteomyelitis; chronic hip infection since 2009; spinal disc disease; coronary heart disease and high blood pressure; Hepatitis C; and chronic renal insufficiency. See id. at 5, ¶¶ 15, 17.

In Count IX of the FAC, Morgan asserts that Corizon was deliberately indifferent to Polston's serious medical needs in that Corizon failed to: provide prescribed medications; timely schedule recommended medical appointments and follow-up evaluations; and ensure that proper orders were given for Polston's safe transportation to medical services. See id. at 36, ¶ 219. Morgan contends that Corizon's acts and/or omissions "were the legal cause of injury and death to [Polston]" and "in many circumstances amounted to no medical care at all." See id. at ¶ 220. Morgan also states that Corizon's actions and/or omissions were committed when Corizon "was under contract for the official capacity defendants[] to provide health services." Id. at 34, ¶ 209.

In support of her claim in Count IX, Morgan asserts that Corizon was responsible for "disregard" and "significant delays" of recommended medications and procedures. Id. at 34-35, ¶¶ 212, 213. Specifically, Morgan alleges that, on September 16, 2013, Dr. Kleinhans, an orthopedic specialist, prescribed Vicodin, which was denied on November 26, 2013, but ultimately approved on December 10, 2013. See id. at ¶ 212. She asserts that, on September 30, 2013, Dr. Laneva, an orthopedic physician, recommended hip arthrotomy with cultures within the next four weeks and prescribed Lortab. See id. at 35, ¶ 213. The medication administration chart "revealed that no Lortab was distributed to Mr. Polston in October 2013[,]" and the recommended procedure was not performed until four

months later on January 30, 2014. See id. When it was noted that Polston was positive for Methicillin-Resistant Staphylococcus Aureus and rare polymorphonuclear leukocytes in January 2014, "[t]here was no noted follow up by Corizon." Id. at ¶ 215. Additionally, Morgan contends that Polston's need for additional antibiotics was not addressed in October 2013, when his prescription for Cefazolin expired. See id. at ¶ 214. With regard to Polston's transportation, Morgan alleges that Corizon medical staff failed to confirm that "proper transportation" had been arranged, causing Polston to be transported in a non-handicapped van in November 2013. See id. at 36, ¶ 218. Morgan notes that, on December 16, 2013, there was a recommendation for a surgical consultation regarding Polston's enlarged spleen, but there is no documentation that the consultation occurred. See id. at 35, ¶ 216. And last, Morgan asserts that, from February 1-16, 2014, Polton's medical records recommended a follow-up appointment with an orthopedic specialist; Polston did not see an orthopedic specialist until February 17, 2014, but Dr. Laneva's report "was not incorporated into the medical chart." Id. at ¶ 217.

**IV. Summary of the Arguments**

In the Motion, Defendant Corizon seeks dismissal of Count IX.[2] In doing so, Corizon asserts that: (1) "there is no mention of a Corizon custom or policy, constitutional or unconstitutional," in the FAC, see Motion at 7; (2) the claim against Corizon "sounds in negligence," see id.; (3) the claim against Corizon is based entirely on vicarious liability because there are no allegations of an unconstitutional custom or policy, but instead the claim relies on alleged failures by Corizon employees, see id. at 8; and (4) Plaintiff fails to provide any factual allegations relating to Corizon in the section, titled "General Allegations and Facts,"[3] and the assertions in that section do not differentiate between FDOC medical care and Corizon care, see id.

In response to Corizon's Motion, Morgan asserts that she has properly and sufficiently stated a claim of deliberate indifference as to Defendant Corizon. See Response at 2. She states that Corizon is liable because the entity was aware of its employees' actions and "has sanctioned or ordained certain acts." Id. at 3 (citations omitted). According to Morgan, she asserted that Corizon was responsible for oversight, personnel, policies, and protocols of medical care, and "specifically identified the policies at issue in

---

[2] In Count IX, Plaintiff claims that Corizon and its employees were deliberately indifferent to Polston's medical needs. See FAC at 34-36.

[3] See FAC at 5-14, ¶¶ 15-77.

paragraph 219(a)-(d) when she stated that Corizon failed" to: provide prescribed medications; timely schedule recommended medical appointments and follow-up evaluations; and ensure that proper orders were given for Polston's safe transportation to medical services. See id. at 2-3 (citing FAC at 4-5, ¶ 14; 36, ¶ 219). Additionally, she asserts that she alleged that Corizon had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence. See id. at 4. She also states that the factual allegations in paragraphs 212 through 218 of the FAC support a claim against Corizon and show a "policy/pattern/practice" that Corizon condoned or allowed. See id. at 4-5. She argues that, given the factual assertions in the FAC, "a reasonable inference can be made that Corizon had a policy and/or condoned delayed healthcare, failure to follow up on specialists' recommendations and failure to ensure and follow up on prescriptions." Id. at 5. Thus, Morgan requests that the Court deny Corizon's Motion and direct Corizon to answer the FAC.[4]

---

[4] In the alternative, Morgan requests leave to amend pursuant to Federal Rule of Civil Procedure 15, if the Court finds that the FAC "was not clear and requires amendment." FAC at 7. However, as previously stated, Morgan had an opportunity to seek leave to amend the operative complaint properly by filing a motion. See Order (Doc. 124), filed October 7, 2015. As of the date of this Order, she has not filed such a motion.

## V. Law and Conclusions

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. <u>Salvato v. Miley</u>, 790 F.3d 1286, 1295 (11th Cir. 2015); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." <u>Rodriguez v. Sec'y, Dep't of Corr.</u>, 508 F.3d 611, 625 (11th Cir. 2007) (quoting <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the Defendant.

As to the requirements for an Eighth Amendment violation, the Eleventh Circuit has explained.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." <u>Farmer</u>, 511 U.S. at 832, 114 S.Ct. at 1976 (internal quotation and citation omitted).[5] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane

---

[5] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

> conditions of confinement. Id. However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. Hudson, 503 U.S. at 8-9, 112 S.Ct. at 1000.[6] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S.Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S.Ct. at 2327.[7]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737; Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015) (setting forth the components of deliberate indifference as (1) the official "was aware of facts

---

[6] Hudson v. McMillian, 503 U.S. 1 (1992).

[7] Wilson v. Seiter, 501 U.S. 294 (1991).

from which the inference could be drawn that a substantial risk of serious harm exists," (2) the official "actually drew that inference," (3) the official "disregarded the risk of serious harm," and (4) the official's "conduct amounted to more than gross negligence.") (citation omitted).

Corizon, a private company, contracted with the FDOC to provide medical services to inmates within the state of Florida. Although Corizon is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state ... is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Denham v. Corizon Health, Inc., Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at *3 n.1 (M.D. Fla. June 4, 2015) ("[W]hen a government function is performed by a private entity like Corizon, the private entity is treated as the functional equivalent of the government for which it works.") (citation omitted), appeal filed,

(11th Cir. July 7, 2015). As such, in this action, Corizon may be held liable for constitutional violations under 42 U.S.C. § 1983. See Motion at 5.

Where a deliberate indifference medical claim is brought against an entity, such as Corizon, based upon its functional equivalence to the government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig, 643 F.3d at 1310 (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur

v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers." City of Canton v. Harris, 489 U.S.

378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Corizon's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Morgan must plead that an official policy or custom of Corizon was the moving force behind the alleged constitutional violation.

Upon review, this Court finds that Corizon's argument that Morgan fails to adequately allege that Corizon had a policy or custom that constituted deliberate indifference to Polston's constitutional rights to be well-taken. The Court concludes that Morgan's boilerplate and conclusory allegations of Corizon's policy or custom — devoid of any factual development — are insufficient to state a § 1983 claim. Even if Morgan has pled facts sufficient to state a constitutional claim against medical personnel who may have delayed or denied medical care to Polston, Morgan would have to show that a policy or custom of Corizon contributed to the constitutional violation in order to hold the corporation liable.[8] She has neither identified an official Corizon policy of deliberate indifference nor an unofficial Corizon custom or practice that was "the moving force" behind the alleged constitutional violation,[9] i.e., that it prevented Polston from receiving timely and adequate medical care and was in deliberate indifference to his constitutional right to such care.

---

[8] Plaintiff contends that, while Corizon asserts that an official policy or custom must be alleged, case law establishes two other theories of liability: (1) inadequate training/supervision, and (2) liability based on hiring practices. See Response at 2 n.1 (citations omitted). However, in addition to not pleading either of these theories, Plaintiff fails to assert any facts to support liability as to Corizon under these two theories.

[9] See City of Canton, 489 U.S. at 389; Monell, 436 U.S. at 694; Grech, 335 F.3d at 1330.

Citing Pembaur, 475 U.S. 469, Morgan asserts that Corizon "sanctioned or ordained certain acts." Response at 3. However, Morgan's reading of Pembaur is too broad. In Pembaur, law enforcement officers had orders to arrest and detain witnesses who were summoned but failed to appear before a grand jury. Pembaur, 475 U.S. at 471–72. When the officers were refused admission to the doctor's office in which the witnesses were located, they consulted with the county prosecutor, who ordered them to forcibly enter the doctor's clinic. The prosecutor, acting as the final decision-maker for the county, directed the action that resulted in the deprivation of the plaintiff's rights. That is the type of single decision by a municipal policymaker for which municipal liability may be imposed. Id. at 480 (stating that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"). Monell liability is limited to acts which a municipality has officially sanctioned or ordered, and in this case, that Corizon has officially sanctioned. However, Morgan neither identifies those officials who speak with final policymaking authority for Corizon concerning the acts alleged to have caused the particular constitutional violations at issue, see Grech, 335 F.3d at 1330, nor provides facts showing that Corizon officially sanctioned or ordered any of the alleged unconstitutional conduct in the way that the prosecutor did in Pembaur. See Pembaur, 475 U.S. at 480. As previously stated,

- 16 -

Corizon cannot be held liable based on any alleged conduct of or decisions by its employees simply because they were working under contract for Corizon to provide medical care to inmates incarcerated in the FDOC.

Here, Morgan makes no allegations specific enough to satisfy the requirement that she demonstrate that the constitutional deprivation was the result of an official corporate policy, the actions of an official fairly deemed to represent the entity's policy, or a custom or practice "so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276; see Hoefling, 2016 WL 285358, at *6. She fails to identify any particular unconstitutional policy or custom at issue or any final decisionmakers for Corizon and, in describing some instances of delay or improper medical treatment, fails to offer any facts to support the existence of a widespread custom. See Iqbal, 556 U.S. at 677; Twombly, 550 U.S. at 570; see also Grech, 335 F.3d at 1330 n.6 (noting that "a single incident would not be so pervasive as to become a custom or practice"); Harvey v. City of Stuart, 296 F. App'x 824, 826 (11th Cir. 2008)[10] (per curiam) (affirming the dismissal of § 1983 action against a municipality because the plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations

---

[10] "Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam) (citation omitted).

were insufficient to support the complaint[]"); Reyes v. City of Miami Beach, No. 07-22680-CIV, 2007 WL 4199606, at *6 (S.D. Fla. Nov. 26, 2007) (recognizing that although there is no heightened pleading standard for § 1983 claims against municipalities, plaintiffs must nevertheless satisfy Twombly's generally applicable basic pleading standard, and holding dismissal warranted because "[i]n recounting only their own alleged incident, offering no other facts to support their claim that the City had an official policy or widespread custom that was directly responsible for their injuries, and failing to identify even one responsible final City policymaker, Plaintiffs have failed to raise their section 1983 claim against the City above the speculative level[]"). Morgan's factual allegations relating solely to individual alleged failures in Polston's care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying timely and adequate medical care, much less that the practice was so widespread that Corizon had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Accordingly, because Morgan has not provided sufficient allegations to state such a claim plausible on its face, Morgan's § 1983 claim against Corizon is due to be dismissed.

Accordingly, it is now

**ORDERED**:

Defendant Corizon's Motion to Dismiss (Doc. 113) is **GRANTED**, and Morgan's § 1983 claim against Corizon is **DISMISSED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of March, 2016.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 3/21
c:
Counsel of Record